UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNION CENTRAL LIFE INSURANCE
COMPANY,

                          Plaintiff,

          - against -

HEATHER A. BERGER,
RISE K. CROSS, and
CYNTHIA STEINMETZ,

                          Defendants.

**MEMORANDUM
OPINION & ORDER**

10 Civ. 8408 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this interpleader action, Union Central Life Insurance Company ("Union
Central") asks this Court to determine the proper beneficiary or beneficiaries of a $700,000
Union Central life insurance policy (the "Policy"), following the death of the policy holder,
Wayne Cross ("Decedent").  (See Second Amended Complaint ("SAC"))  Decedent obtained the
Policy as part of a divorce settlement agreement ("Settlement Agreement") between himself and
his first wife, Rise K. Cross ("Cross").  In accordance with the Settlement Agreement, Decedent
named as irrevocable Policy beneficiaries Cross and Heather A. Berger, Decedent's daughter.

          Decedent later changed the beneficiaries of the Policy, however, substituting his
second wife, Cynthia Steinmetz, for Cross and Berger.  In contravention of the Policy's terms,
which require that consent to any change in beneficiary must be obtained from irrevocable
beneficiaries such as Cross and Berger, Union Central accepted Decedent's change in
beneficiary without confirming Cross and Berger's consent.  After Decedent's death, Steinmetz
attempted to collect as the beneficiary under the Policy, but was told that there had been an error
in changing the beneficiary.  Cross and Berger argue that they did not consent to the change in

beneficiary, and claim that they remain the rightful beneficiaries under the Policy.  In light of this dispute, Union Central initiated this interpleader action.

All parties have now moved for summary judgment.  Union Central moves for summary judgment against Cross, Berger, and Steinmetz, individually and as executrix of Decedent's estate, asking this Court to, inter alia, determine the rightful beneficiary under the Policy.  (Dkt. No. 72; Union Central Notice of Motion)  Cross and Berger move for partial summary judgment on, inter alia, Cross's claim to $700,000 in death benefits due under the Policy, and also seek dismissal of all affirmative defenses and cross-claims asserted against them.  (Dkt. No. 53; Cross/Berger Notice of Motion)  Cynthia Steinmetz, individually and as executrix of Decedent's estate, moves for summary judgment on all her claims and defenses. (Dkt. No. 56; Steinmetz Notice of Motion)

## BACKGROUND

Union Central is an insurance company with its principal place of business in Ohio.  (Cross/Berger Rule 56.1 Stmt. ¶ 1)[1]  Cross and Berger are residents of New York.  (SAC ¶¶ 3, 4)  At all relevant times Decedent and Steinmetz were residents of Connecticut. (Cross/Berger Rule 56.1 Stmt. ¶ 2; SAC ¶¶ 2, 5)

On August 18, 2000, Cross and Decedent entered into a Settlement Agreement pursuant to their divorce.  (Cross/Berger Rule 56.1 Stmt. ¶ 8)  The Settlement Agreement required Decedent to purchase $2.2 million in life insurance, to name Cross and Berger as irrevocable beneficiaries, and to maintain this policy until he reached age 62.  (Id. ¶ 9; Del

---

[1]  To the extent that this Court relies on facts drawn from Local Rule 56.1 statements, it does so because the opposing parties have either not disputed those facts or have not done so with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .  fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).

Mauro Cert., Ex. 15 at 16)  After age 62, Decedent was to maintain $1 million of life insurance,

with Cross and Berger as irrevocable beneficiaries, until he reached age 75.  (Id. ¶ 10; Del Mauro

Cert., Ex. 15 at 16)[2]

        The Settlement Agreement's "Releases" section reads, in relevant part, as follows:

1.  Except as otherwise provided for herein, and except grounds for divorce, [Cross] agrees to release, and hereby does release, any and all claims of [Cross] to or upon the property of the [Decedent], whether real or personal and whether now owned or hereafter acquired, to the end that he shall have free and unrestricted right to dispose of his property now owned or hereafter acquired, free from any claim or demand of [Cross] and so that his estate and all income therefrom derived or to be derived shall go and belong to the person or persons who become entitled thereto by gift, devise, bequest, intestacy, administration or otherwise, as if [Cross] had died during the lifetime of the [Decedent] and, without in any manner limiting the foregoing, [Cross] expressly relinquishes any and all rights in the estate of the [Decedent]. . . and renounces and disclaims, and covenants to renounce and disclaim . . . all interest . . . under any . . . death benefit . . . plan, with respect to which [Decedent] was a participant. . . .

2.  [Cross] further agrees to execute any and all documents which shall be required, at any time, and from time to time, by any or all jurisdictions in order that such renunciation and disclaimer shall be effective as though the Plaintiff has predeceased the Decedent, including, without limiting the generality of the foregoing, the renunciation and affidavit of renouncing party referred to in Section 2-1.11 of the EPTL, and any documents necessary to permit redesignation of beneficiaries under any of the [Decedent's] pension, profit sharing, 401K and/or individual retirement accounts. . . . In the event that, notwithstanding the renunciation and disclaimer

---

[2]  These provisions of the Settlement Agreement state:

[Decedent] shall maintain and keep in full force and effect until age 62 insurance on his life having an aggregate death benefit of Two Million Two Hundred Thousand ($2,200,000.00) Dollars which shall be for the irrevocable benefit of [Cross] until her death or until [Decedent] is age 62 and thereafter for the irrevocable benefit of the parties' child surviving [Decedent] until [Decedent] is age 62.

At and after [Decedent] is age 62, [Decedent] shall maintain and keep in full force and effect [until age 75] insurance on his life having an aggregate death benefit of One Million ($1,000,000.00) Dollars which shall be for the irrevocable benefit of [Cross] until the sooner to occur of her death or [Decedent] is age 75 and thereafter for the irrevocable benefit of the parties' child surviving [Decedent] until [Decedent] is age 75.

(Del Mauro Cert., Ex. 15 at 16)

referred to in paragraph 1 of this Article, [Cross] receives any right, title or interest in any property so renounced or disclaimed for any reason whatsoever, then, the Plaintiff shall immediately transfer all such right, title or interest to the estate of the Decedent.

(Del Mauro Cert., Ex. 15 at 27-28)

The "General Provisions" section of the Settlement Agreement states, in part:

Each of the parties hereto, without cost to the other, shall at any time and from time to time hereafter execute and deliver any and all further instruments and assurances and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement.

(Id. ¶ 56; Del Mauro Cert., Ex. 15 at 36)

In August 2000, as part of his obligation to obtain $2.2 million in life insurance, Decedent applied for a $700,000 life insurance policy with Union Central, designating Cross as the primary beneficiary of the policy.  (Cross/Berger Rule 56.1 Stmt. ¶ 11)  In September 2000, Union Central issued Decedent the Policy (No. T000018940), which insured Decedent's life for $700,000, with Cross designated as the primary beneficiary.  (Id. ¶ 12; Del Mauro Cert., Ex. 2) The Policy provided in part:

OWNERSHIP

The owner's rights will be subject to . . . the rights of any irrevocable beneficiary.[3]

BENEFICIARY

Unless the beneficiary designation provides otherwise, the Company will follow these rules . . .

(3) An irrevocable beneficiary cannot be changed without his or her consent. . . .

The owner may change the beneficiary at any time before the insured dies by notice to the Company.

_____

[3]  The Policy defines the "Owner" as "the owner named in the application, unless changed." (Del Mauro Cert., Ex. 2 at 4)  The owner named in the application is the "proposed insured," which in this case is Wayne Cross, the Decedent.  (Del Mauro Cert., Ex. 1)

(Del Mauro Cert., Ex. 2 at 5-6) (emphasis omitted).

The designation of Cross as "primary beneficiary" did not fully comply with the Settlement Agreement, however, and on October 31, 2000, Decedent executed a "Policyowner's Change and Service Request," updating the beneficiary designations of the Policy to name Cross as the irrevocable primary beneficiary and Berger as the irrevocable contingent beneficiary. (Cross/Berger Rule 56.1 Stmt. ¶ 14; Del Mauro Cert., Ex. 4)  On January 8, 2001, Union Central sent Decedent written notice confirming that Cross and Berger were irrevocable primary and contingent beneficiaries under the Policy.  (Cross/Berger Rule 56.1 Stmt. ¶ 17; Del Mauro Cert., Ex. 5)  In satisfaction of his remaining insurance obligations under the Settlement Agreement, Decedent named Cross and Berger as irrevocable beneficiaries under two other life insurance policies:  a $1 million Union Central policy and a $500,000 policy issued by Mass Mutual. (Cross/Berger Rule 56.1 Stmt. ¶ 18)

On April 13, 2001, Decedent attempted to make Cross the "owner" of the Policy. (Id. ¶ 19)  In an April 26, 2001 letter, Union Central informed Cross of the change of ownership, and Cross promptly informed Union Central that she would not accept this change.  (Id. ¶¶ 20-21)  In a May 7, 2001 letter, Union Central sent Cross a copy of the ownership change form signed by Decedent, and Cross again informed Union Central that she would not accept the change.  (Id. ¶¶ 22-23)  In a May 24, 2001 letter to Decedent, Union Central returned the change of ownership form and informed him that he was

> unable to make this change, or any other changes on this Policy without the authorization of Rise K. Cross.  This is due to the fact that she is the Irrevocable Beneficiary and although she does not own the policy, this gives her ownership rights.

(Id.; Del Mauro Cert., Ex. 11)

After Decedent's divorce from Cross, Decedent married Steinmetz. (Cross/Berger Rule 56.1 Stmt. ¶ 25)  On October 3, 2007, having reached age 62, Decedent completed a Union Central form – a "Policy Owner's Change and Service Request" – substituting Steinmetz as the beneficiary under the Policy, and his insurance broker, Debra Slavutin, submitted the form to Union Central.  (Id. ¶ 26; Steinmetz Rule 56.1 Stmt. ¶ 70; Union Central Rule 56.1 Stmt. ¶ 229)  A Union Central customer service representative reviewed Decedent's Change and Service Request form and asked Decedent to sign page 2 of the form and confirm the spelling of Steinmetz's name.  Union Central did not inform Decedent of any other deficiencies in the change form.  (Steinmetz Rule 56.1 Stmt. ¶¶ 73-74)  On October 19, 2007, Decedent added the requested signature and Slavutin re-submitted the change request to Union Central.  (Id. ¶ 75; Del Mauro Cert., Ex. 12)  On October 22, 2007, Decedent confirmed the spelling of Steinmetz's name and again signed and re-submitted the change request.  (Id. ¶ 76; Steinmetz Rule 56.1 Appx., Ex. 21)

Neither Decedent nor Union Central informed Cross or Berger in 2007 that Decedent had executed the change request, and neither Cross nor Berger was asked to, or did, consent to the beneficiary change at that time.[4]  (Cross/Berger Rule 56.1 Stmt. ¶¶ 27-29).  Union Central accepted the Decedent's change request and confirmed that fact in writing to Decedent,[5] but did not notify Cross or Berger of the change.  (Id. ¶ 30)  After confirming the change, Union

---

[4]  Union Central and Steinmetz argue that Cross consented to this change in the Settlement Agreement.  (Union Central Resp. to Cross/Berger Rule 56.1 Stmt. ¶ 29; Steinmetz Resp. to Cross/Berger Rule 56.1 Stmt. ¶ 29)  Cross and Berger deny that they ever consented to this change.  (Cross/Berger Rule 56.1 Stmt. ¶ 29)

[5]  On October 30, 2007, and November 2, 2007, Union Central sent Decedent written confirmations of the change.  (Steinmetz Rule 56.1 Stmt. ¶¶ 77, 79; Steinmetz Rule 56.1 Appx., Exs. 22, 24)

Central never informed Decedent that there was any deficiency with respect to the change, or that it was otherwise ineffective or unenforceable.[6]  (Steinmetz Rule 56.1 Stmt. ¶ 84)

Decedent died on August 25, 2010, at age 65.  (Steinmetz Rule 56.1 Appx., Ex. 17)  At the time of his death, the Policy was in full force and effect.  (Cross/Berger Rule 56.1 Stmt. ¶ 32)  Steinmetz notified Slavutin of Decedent's death that same day, and Slavutin reported the death to Union Central that day.  (Id. ¶¶ 33-34)

On August 27, 2010, a Union Central employee told Slavutin that the Company would not pay Steinmetz's claim because the Policy was subject to an irrevocable beneficiary designation.  (Id. ¶ 35; Del Mauro Cert., Ex. 12 at 124-135 (Slavutin Tr.))  Later that day, John Lucas, Union Central's general counsel, told Slavutin that Union Central had made a "clerical error" in processing the Decedent's Change and Service Request, and that it would be necessary to obtain releases from Cross and Berger consenting to the change in beneficiary.  (Cross/Berger Rule 56.1 Stmt. ¶ 36)

On August 30, 2010, Cross called Union Central to report Decedent's death.[7]  (Id. ¶ 37)  On August 31, 2010, Lucas told Cross that "a mistake had been made . . . . in 2007" and that Cross and Berger "as irrevocable beneficiaries . . . needed to approve the change [in

---

[6]  Mass Mutual rejected Decedent's October 2007 request to change the beneficiary in the Mass Mutual policy to Steinmetz.  Mass Mutual would not accept such a change absent a court order releasing Cross and Berger as irrevocable beneficiaries under the Mass Mutual policy.  On February 1, 2008, the $500,000 Mass Mutual policy lapsed for non-payment of premium. (Cross/Berger Rule 56.1 Stmt. ¶ 31)

In its Rule 56.1 Statement, Union Central notes that Mass Mutual told Slavutin in October 2007 that a court order would be necessary to change the beneficiary under its policy.  Slavutin never asked Union Central what was necessary to make a beneficiary change under the Union Central policy at issue here, however.  (See Union Central Rule 56.1 ¶¶ 237-245)

[7]  Cross was calling to confirm that she would receive the proceeds of the $1 million Union Central policy.  She did not inquire about the $700,000 policy at issue here, because she "didn't know the status of [it], whether [Decedent] has continued it or not."  (Steinmetz Rule 56.1 Stmt. ¶ 87, Steinmetz Rule 56.1 Appx., Ex. 9 at 68 (Cross Tr.))

beneficiary]" Decedent had made in 2007.  (Id. ¶ 38, Steinmetz Rule 56.1 Appx., Ex. 10 at 20

(Lucas Tr.))  On September 1, 2010, Lucas sent Cross a letter confirming their August 31

discussion that a "clerical error" had been made regarding Decedent's execution of the

beneficiary change request.  (Cross/Berger Rule 56.1 Stmt. ¶ 39; Steinmetz Rule 56.1 Appx., Ex.

27)  Enclosed with Lucas's letter was a proposed agreement (the "Consent Agreement") in which

Cross and Berger would indicate that they consented to the Decedent's October 2007 Change

and Service Request, directing that the Policy's beneficiary be changed to Steinmetz.

(Cross/Berger Rule 56.1 Stmt. ¶ 40; Steinmetz Rule 56.1 Appx., Ex. 27)  Cross and Berger

refused to sign the Consent Agreement.  (Id. ¶ 42)

   On September 7, 2010, Steinmetz filed her notice of claim with Union Central,

seeking payment of the Policy's $700,000 death benefit.  (Id. ¶ 43)  On September 20, 2010,

Cross submitted her claim to Union Central concerning the Decedent's $1 million Union Central

policy; Union Central paid that $1 million claim on October 1, 2010.  (Id. ¶ 44; Union Central

Rule 56.1 Stmt. ¶¶ 262-263)

   On November 8, 2010, Union Central initiated this interpleader action.  (Dkt. No.

1)  On December 16, 2010, Union Central filed an Amended Complaint (Dkt. No. 10), and on

March 24, 2011, Union Central filed a Second Amended Complaint.  (Dkt. No. 28)  On April 5,

2011, Cross and Berger answered and asserted counterclaims against Union Central.  (Dkt. No.

34)  On April 25, 2011, Steinmetz and the Estate answered, asserting counterclaims against

Union Central; Steinmetz and the Estate also asserted cross-claims against Cross.  (Dkt. No. 40)

On May 9, 2011, Cross answered those claims, and she and Berger asserted cross-claims against

Steinmetz and the Estate unrelated to the Policy at issue here. (Dkt. No. 41)

On October 26, 2011, Union Central, Steinmetz and the Estate, and Cross and Berger moved for summary judgment.  (Dkt. Nos. 53, 56, 72)  Union Central moves for summary judgment against Cross and Berger, and against Steinmetz individually and as executrix of the Estate, seeking an order granting it interpleader relief.  (Union Central Not. of Mot.; Union Central Sum. J. Br. 24)

Steinmetz and the Estate move for an order (1) granting Steinmetz the $700,000 in death benefits due under the Policy; (2) granting the Estate summary judgment on its cross-claim for breach of contract against Cross; (3) granting Steinmetz and the Estate summary judgment on their unjust enrichment cross-claims against Cross; (4) granting Steinmetz summary judgment on her cross-claim against Cross for tortious interference; (5) granting Steinmetz and the Estate summary judgment on their counterclaims against Union Central for equitable estoppel, negligence, negligent misrepresentation, and reformation; (6) granting the Estate summary judgment on its counterclaim against Union Central for breach of contract; and (7) granting Steinmetz summary judgment on her counterclaim against Union Central for third-party beneficiary breach of contract.  (Steinmetz Not. of Mot.; Stein Sum. J. Br. 1, 25; Steinmetz Opp. Br. 19-20)

Cross and Berger move for an order (1) granting Cross the $700,000 in death benefits due under the Policy; (2) granting them summary judgment on their breach of contract and negligence counterclaims against Union Central; (3) dismissing the claims and striking the affirmative defenses asserted against them by Union Central; (4) dismissing the cross-claims

9

asserted against them by Steinmetz and the Estate; and (5) awarding them attorneys' fees.[8]
(Cross/Berger Not. of Mot.; Cross/Berger Sum. J. Br. 1)

## DISCUSSION

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  However, "a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).

## II.   INTERPLEADER RELIEF IS AVAILABLE

Union Central brings this interpleader action pursuant to 28 U.S.C. § 1335, which grants district courts original jurisdiction over interpleader actions in which the amount at stake is $500 or more, and the action presents "[t]wo or more adverse claimants, of diverse

---

[8]  Defendants have also asked this Court to deny Union Central's request for attorneys' fees. (Cross/Berger Not. of Mot.; Cross/Berger Opp. to Union Central Br. 20; Steinmetz Opp. Br. 18) Union Central has withdrawn its claim for attorneys' fees.  (Union Central Opp. to Steinmetz Br. at 7; Union Central Sum. J. Reply Br. 1-2)

citizenship," who are claiming or may claim to be entitled to the money or property at issue.[9]  28 U.S.C. § 1335.  The statute requires that the interpleader plaintiff deposit the money or property "into the registry of the court, there to abide the judgment of the court. . . ."  Id.

Interpleader is "rooted in equity" and is triggered by a "'real and reasonable fear of double liability or vexatious, conflicting claims.'"  Washington Elec. Co-op. Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677 (2d Cir. 1993) (quoting Indianapolis Colts v. Mayor of Baltimore, 741 F.2d 954, 957 (7th Cir. 1984)).  "Historically, a bill of interpleader was an equitable device whose purpose was 'the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing.'"

---

[9]  Although Union Central brings this interpleader action pursuant to 28 U.S.C. § 1335, Union Central argues in its summary judgment motion that "[t]his Court's authority to grant interpleader relief in this matter arises out of Fed. R. Civ. P. 22. . . ." (Union Central Sum. J. Br. at 10)

"Since the 1930's, interpleader has been authorized both by statute, see 28 U.S.C. § 1335 (1988), and by Fed. R. Civ. P. 22."  Bradley v. Kochenash, 44 F.3d 166, 168 (2d Cir. 1995).  Rule 22 reads in part:

> Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.  Joinder for interpleader is proper even though: (A) the claims of the several claimants, or the titles on which their claims depend, lacj a common origin or are adverse and independent rather than identical.

Fed.R.Civ.P. 22(a)(1).  "The interpleader statute, 28 U.S.C. § 1335, applies only where there is "minimal diversity," i.e., where there are "[t]wo or more adverse claimants, of diverse citizenship. . . .""  Truck-A-Tune, Inc. v. Re, 23 F.3d 60 (2d Cir. 1994) (citing State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967)).  A court can "convert the statutory interpleader actions to rule interpleader actions pursuant to Rule 22 of the Federal Rules of Civil Procedure" as long as there is an "independent basis for subject matter jurisdiction."  Glenclova Inv. Co. v. Trans-Resources, Inc., Nos. 08 Civ. 7140 (JFK), 11 Civ. 5602 (JFK), 11 Civ. 7923 (JFK), 2012 WL 2196670, at *10 (S.D.N.Y. June 14, 2012).  Here, there is "minimal diversity" because Cross and Berger are residents of New York, Steinmetz is a resident of Connecticut, and Union Central is an Ohio corporation.  There is also diversity jurisdiction under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.  Accordingly, this Court finds that both statutory and rule-based interpleader are applicable here.

Bradley v. Kochenash, 44 F.3d 166, 168 (2d Cir. 1995) (quoting Texas v. Florida, 306 U.S. 398, 412 (1939)).

Interpleader is designed to prevent claimants from racing to obtain a judgment, and thereby obtaining "a disproportionate slice of the fund before . . . fellow claimants [are] able to establish their claim.  The difficulties such a race to judgment pose for the [stakeholder], and the unfairness which may result to some claimants, were among the principal evils the interpleader device was designed to remedy."  State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 533 (1967).  Interpleader "'insulate[s] a stakeholder from contradictory judgments and multiple liability and . . . relieve[s] a stakeholder from having to determine which claim among several is meritorious.'"  Weininger v. Castro, 462 F.Supp.2d 457, 500 (S.D.N.Y. 2006) (quoting John v. Sotheby's, Inc., 141 F.R.D. 29, 33 (S.D.N.Y. 1992)).

An interpleader action typically proceeds in two stages:  "[d]uring the first stage, the court determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action; during the second, the Court determines the rights of the competing claimants to the fund."  Locals 40, 361 & 417 Pension Fund v. McInerney, No. 06 Civ. 5224 (JFK), 2007 WL 80868, at *3 (S.D.N.Y. Jan. 9, 2007).  In determining whether an interpleader is appropriate, this Court must assess whether Union Central "'legitimately fears multiple liability directed against a single fund, regardless of the merits of the competing claims.'"  Washington Electric, 985 F.2d at 679 (quoting Fidelity Brokerage Servs., LLC v. Bank of China, 192 F. Supp.2d 173, 178 (S.D.N.Y. 2002).  Here, Union Central asserts that it fears that payment of the Policy proceeds to either Cross or Steinmetz will subject it to multiple liability.  Indeed, both Cross and Steinmetz have asserted counterclaims against Union Central seeking payment of the Policy death benefit.  (Cross/Berger Answer to SAC, ¶ 79; Steinmetz/Estate Answer to SAC at 16)

Defendants do not dispute that this case meets the requirements for interpleader relief[10] (see, e.g., Steinmetz Opp. Br. 18), but they do object to a passing reference in one of Union Central's briefs that interpleader entitles it to "be absolved of any further liability"  See Union Central Sum. J. Br. 12.  Defendants argue that Union Central should not be absolved of all liability through application of interpleader, because had it not mistakenly accepted the change in beneficiary in 2007, this case would not be before this Court.  (Steinmetz Opp. Br. at 15; Cross/Berger Opp. to Union Central Br. at 19-22).  Union Central does not press this argument, which would not be well taken.

"[I]nterpleader was never intended . . . to be an all-purpose 'bill of peace,'" State Farm, 386 U.S. at 535, and it does not act "as a bar to the filing of either compulsory or permissive counterclaims in interpleader actions."  Bell v. Nutmeg Airways Corp., 66 F.R.D. 1, 9 (D. Conn. 1975).  Accordingly, to the extent that Defendants' claims against Union Central are not premised solely on a refusal to pay out the Policy proceeds and invocation of the interpleader remedy, they are not barred.  See, e.g., Lutheran Bhd. v. Comyne, 216 F.Supp.2d 859, 862-63 (E.D. Wis. 2002) (dismissing "counterclaims [that] are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants.  Courts have consistently rejected such counterclaims where, as here, the plaintiff was entitled to pursue interpleader relief.")

_____

[10]  Although Union Central was negligent in accepting the beneficiary change without determining whether Cross and Berger had consented to the change, such negligence does not bar resort to interpleader.  See William Penn Life Ins. Co. of New York v. Viscuso, 569 F.Supp.2d 355, 362 (S.D.N.Y. 2008) (insurer was negligent in accepting unauthorized beneficiary change; court held that "negligence on the part of [an insurer] does not bar interpleader, even if the controversy has resulted quite directly and foreseeably from that negligence").

13

### III.     STEINMETZ IS ENTITLED TO THE PROCEEDS OF THE POLICY

It is undisputed that Cross and the Decedent executed a valid Settlement Agreement pursuant to their divorce (Cross/Berger Rule 56.1 ¶ 8; Steinmetz Rule 56.1 ¶ 50), and that the Settlement Agreement required Decedent to purchase and maintain $2.2 million of life insurance for the irrevocable benefit of Cross and Berger until he reached age 62.  (Cross/Berger Rule 56.1 ¶ 9; Steinmetz Rule 56.1 ¶ 54)  After age 62, Decedent was required to maintain $1 million of life insurance, for the irrevocable benefit of Cross and Berger, until he reached the age 75.  (Cross/Berger Rule 56.1 ¶ 10; Steinmetz Rule 56.1 ¶ 54)  Cross admits that the Decedent obtained the life insurance policies necessary to meet his obligations under the Settlement Agreement, and that after he turned 62, and until his death, he maintained a $1 million policy for the benefit of Cross as irrevocable primary beneficiary and Berger as irrevocable contingent beneficiary.  (Cross/Berger Resp. to Steinmetz Rule 56.1 ¶ 67)  It is likewise undisputed that Cross received the proceeds of the $1 million Union Central policy after Decedent's death. (Steinmetz Rul 56.1 Stmt. ¶ 44; Union Central Rule 56.1. Stmt. ¶¶ 262-63; Cross/Berger Opp. to Union Central Br. 7 n. 6)

It is likewise undisputed that, in the Settlement Agreement, Cross (1) provided a full and complete release of all claims to Decedent's property, "whether now owned or hereafter acquired," "[e]xcept as otherwise provided for [in the Settlement Agreement]"; (2) "relinquishe[d] any and all rights in the estate of the [Decedent]. . . and renounce[d] and disclaim[ed], and covenant[ed] to renounce and disclaim . . . all interest . . . under any . . . death benefit . . . plan with respect to which [Decedent] was a participant. . . ."; (3) "agree[d] to execute any and all documents which shall be required . . . in order that such renunciation and disclaimer shall be effective"; (4) agreed that in the event that she "receive[d] any right, title or

14

interest in any property so renounced or disclaimed for any reason whatsoever . . . [to] immediately transfer all such right, title or interest to the estate of the Decedent"; and (5) agreed to "execute and deliver any and all further instruments and assurances and perform any acts that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement."  (Del Mauro Cert., Ex. 15 at 27-28, 36)

It is further undisputed that in October 2007, after he turned 62, Decedent completed a "Policy Owner's Change and Service Request" in which he directed that Steinmetz be substituted as beneficiary in place of Cross and Berger.  (Cross/Berger Rule 56.1 Stmt. ¶ 26; Steinmetz Rule 56.1 Stmt. ¶ 70 and Rule 56.1 Appx., Exs. 18, 20, 21; Union Central Rule 56.1 Stmt. ¶229)  Union Central accepted the Change and Service Request and twice provided to Decedent written confirmation of the beneficiary change.  (Steinmetz Rule 56.1 ¶¶ 77, 79 and Steinmetz Rule 56.1 Appx. Exs., 22, 24)  In contravention of the Policy, however, Union Central did not obtain consent from Cross and Berger to the beneficiary change.  (Cross/Berger Rule 56.1 Stmt. ¶ 29 and Appx. Ex. 2 at ¶ 59)

Cross and Berger now argue that they remain as beneficiaries under the Policy and are entitled to its proceeds, because "a change of beneficiary in an insurance plan must be accomplished in the manner specified in the policy," see Sun Life. Assur. Co. of Canada v. Gruber, No. 05 Civ. 10194 (NRB), 2007 WL 4457771, at *16 (S.D.N.Y. Dec. 14, 2007); McCarthy v. Aetna Life Ins. Co., 92 N.Y.2d 436, 440 (1998) (the general rule is that "the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary"), and the beneficiary change here violates the terms of the Policy.[11]

---

[11]  The Settlement Agreement provides that it "shall be governed by the laws of the State of New York" (Del Mauro Cert., Ex. 15 at Art. XVIII(4)), and all parties agree that New York applies to issues arising under the Settlement Agreement.  (Union Central Opp. to Steinmetz Br. 14-16;

Steinmetz and the Estate argue that Steinmetz is entitled to the Policy proceeds because (1) the Decedent met his obligation under the Settlement Agreement to maintain a $1 million insurance policy that named Cross as irrevocable primary beneficiary and Berger as irrevocable contingent beneficiary; (2) Cross received the proceeds of the $1 million policy; (3) in the Settlement Agreement, Cross renounced all rights to Decedent's property other than as expressly set forth in the Settlement Agreement; (4) Cross agreed in the Settlement Agreement to turn over to Decedent's estate "any right, title or interest in any property so renounced"; and (5) Cross agreed to "execute and deliver any and all further instruments and assurances and perform any acts that the [Decedent or his estate] may reasonably request for the purpose of giving full

---

Steinmetz Sum. J. Br. 10-11; Cross/Berger Sum. J. Br. 19-22 (applying New York law to claims under Settlement Agreement; Cross/Berger Opp. to Union Central Br. 8-16 (applying New York law)). The Policy is silent as to what law applies. Union Central argues that New York law applies to issues arising under the Policy (Union Central Opp. to Steinmetz Br. 14-24; see Union Central Opp. to Cross/Berger Br. 11-19; Cross and Berger cite to New York law in discussing issues arising under the Policy (Cross/Berger Opp. to Union Central Br. 8-16; Cross/Berger Opp. to Steinmetz Br. 7-13); and Steinmetz and the Estate argue that Connecticut or Ohio law applies to issues arising under the Policy. (Steinmetz Sum. J. Br. 16-17) The Court will cite to New York law. A federal court exercising diversity jurisdiction is required to apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under New York law, a choice of law analysis is only required where an actual conflict exists between alternative laws. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998). "'In the absence of substantive difference, [] a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.'" Licci v. Am. Express Bank Ltd., 704 F. Supp. 2d 403, 409 (S.D.N.Y. 2010) (quoting Int'l Bus. Machs., Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004)).

Here, issues arising under the Policy and the Settlement Agreement are inextricably intertwined, in part because the Policy was the product of the Settlement Agreement. As discussed below, the Court has determined that the Settlement Agreement is dispositive as to the issue of which party is entitled to the proceeds of the Policy. All parties agree that the Settlement Agreement is governed by New York law. To the extent that it has been necessary to consider the terms of the Policy, no party has identified any difference between New York law, and the law of Ohio or Connecticut, that is material to the outcome in this case. See Cross/Berger Opp. to Steinmetz Br. 8 n.8 (contending that Connecticut and Ohio law are "in accord" with New York law governing the change of beneficiary in an insurance contract).

force and effect to the provisions of [the Settlement Agreement]."  (Steinmetz Sum. J. Br. at 11-13)

        Cross and Berger are correct that, generally, "the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary."  McCarthy, 92 N.Y.2d at 440.  However, "strict compliance with the rule is not always required."  Id.; Sun Life, 2007 WL 4457771, at *17 ("New York is in the growing majority of states that do not require strict performance by an insured with the terms of a life insurance policy").  "Instead, '[t]here must be an act or acts designed for purpose of making the change, though they may fall short of accomplishing it.'"  Id. (quoting Aetna Life Ins. Co. v Sterling, 15 A.D.2d 334, 335 (1st Dep't), aff'd, 11 N.Y.2d 959 (1962)).  The "paramount factor in resolving the controversy is the intent of the insured."  Id. (quoting Cable v Prudential Ins. Co. of Am., 89 A.D.2d 636 (3rd Dep't 1982).

        Here, the Court finds that Decedent's actions constitute "substantial compliance" with the terms of the Policy governing the change of beneficiary:

> Under the doctrine of substantial compliance, exact compliance with the terms of the policy will be excused, and a change of beneficiary given effect, where the insured took "an affirmative act or acts to accomplish a change of beneficiary, and these affirmative act or acts . . . accomplished all that it was in [the insured's] actual power to do to change beneficiaries."  Gruber, 2007 WL 4457771, at *18, (citing McCarthy, 92 N.Y.2d at 440) (internal quotation marks and citations omitted).  The intent of the insured is key to the inquiry, but proof of intent alone is not enough:  the insured's intent must have been thwarted by circumstances beyond his or her control.  See id.; Schoenholz v. N.Y. Life Ins. Co., 234 N.Y. 24, 29-30 (1922); Conn. Gen. Life Ins. Co. v. Boni, 48 A.D.2d 621 (1st Dep't 1975).  The insured must have done "all that was reasonably possible to do to show his intention" or have made "every reasonable effort to comply with the policy requirements."  McCarthy, 92 N.Y.2d at 440 (internal quotation marks omitted).

William Penn Life Ins. Co. of New York v. Viscuso, 569 F.Supp.2d 355, 365-66 (S.D.N.Y. 2008).

        Although Decedent is presumed to have known that Cross and Berger's consent was necessary to effect a change in beneficiary, Busker on Roof Ltd. Partnership Co. v

Warrington, 283 A.D.2d 376, 377 (1st Dep't 2001), and indeed had been informed in writing six years earlier that "he could not make changes on this Policy without the authorization of Rise K. Cross . . . [because] she is the Irrevocable Beneficiary" (Del Mauro Cert., Ex. 11) – this Court is satisfied that Decedent did "all that was reasonably possible to show his intention" that he wanted to change the beneficiary.  The Policy does not specify what form "consent" must take, and it is apparent that Decedent was aware that the Settlement Agreement provides that after he reaches age 62, his insurance obligation extends only to $1 million.  Decedent was presumably also aware that Cross had waived all rights to any additional property not provided for in the Settlement Agreement.  In 2007, after reaching age 62, and in recognition of the fact that he was no longer required to maintain more than $1 million of insurance naming Cross and Berger as beneficiaries, Decedent submitted the Policy Owner's Change and Service Request three times to Union Central (Steinmetz Rule 56.1 Appx., Exs. 18, 20, 21) – directing on each occasion that Steinmetz be substituted as beneficiary in place of Cross and Berger – and twice received written confirmation that the requested change had been made.  (Steinmetz Rule 56.1 Appx., Exs. 22, 24)  Given this record, it is crystal clear that Decedent intended to substitute Steinmetz as the beneficiary under the Policy, and that he repeatedly took affirmative steps to accomplish this change.  After Union Central twice confirmed that the beneficiary change had been made, it was reasonable for Decedent to have believed that the beneficiary change had in fact been made.

Cross and Berger's efforts to dismiss the ramifications of the Settlement Agreement are not persuasive.  They argue that (1) the Policy is complete on its face, and therefore, New York law does not allow reference to extrinsic evidence (Cross/Berger Opp. to Steinmetz Br. at 10)(citing R/S Assoc v. Job Dev. Auth., 98 N.Y.2d 29, 33 (2002) (noting that "when parties set down their agreement in a clear, complete document, their writing should as a

rule be enforced according to its terms"); and (2) the Policy is the entire contract and does not

refer to or otherwise incorporate any of the terms of the Settlement Agreement.  (<u>Id</u>.) (citing

<u>Battery SS Corp v. Refineria Panama SA</u>, 513 F.2d 735, 738 n. 3 (2d Cir. 1975) ("Under New

York law a contract which appears complete on its face is an integrated agreement as a matter of

law."))  The cases cited by Cross and Berger are not helpful, however, because they do not

discuss the interplay between a written divorce agreement – in which rights to an insurance

policy's death benefit are addressed – and an insurance policy referenced in the divorce

agreement.  In such circumstances, courts routinely look outside the insurance policy to

determine whether a beneficiary has waived his or her rights to a policy's death benefit in a

divorce agreement.

          "A divorcee's claims to property of a deceased ex-spouse may be waived as a

result of a stipulation in a divorce settlement" so long as the waiver is "explicit, voluntary and

made in good faith."  <u>Diversified Inv. Advisors, Inc. v. Baruch</u>, 793 F.Supp.2d 577, 580-81

(E.D.N.Y. 2011); <u>see</u> <u>also</u> <u>Mohawk Airlines v. Peach</u>, 61 A.D.2d 346, 349 (4th Dep't 1978), <u>lv</u>

<u>denied</u>, 44 N.Y.2d 838 (1978) (decedent's first wife made claim to the proceeds of decedent's

retirement plans, in which she had been named as beneficiary; held that she had waived her

claim to these monies in the separation agreement, in which she had she given "up her claims to

'any distributive share, or any claim of any other kind or nature whatsoever, in or to any part of

the estate or property [of decedent]'"); <u>Curley v. Giltrop</u>, 68 N.Y.2d 651, 654 (1986) (enforcing

"promise not to make claim for retirement program death benefits or life insurance proceeds" in

divorce agreement where defendant had "received the consideration [she] bargained for").

          "A broadly phrased, umbrella waiver of 'claims,' 'rights,' an 'estate,' or

'property' is insufficiently explicit under New York law."  <u>Diversified Inv. Advisors, Inc.</u>, 793

F.Supp.2d at 581 (citing Eredics v. Chase Manhattan Bank, N.A., 100 N.Y.2d 106, 108, 112,

(2003) (waiver of "any and all rights . . . to share in the estate of the other party" insufficiently

explicit as to a Totten trust)).  However, "[o]verwhelming authority supports the proposition that

a waiver is sufficiently explicit when it describes a precise category of claims to which rights are

waived, without expressly naming a specific instrument."  Id.[12]

    Here, in Article XV – the "Releases" section of the Separation Agreement – Cross

broadly waived "[e]xcept as otherwise provided for herein . . . any and all claims . . . to or upon

the property of the [Decedent]," including as to any "death benefit."  (Del Mauro Cert., Ex. 15 at

27-28)  In addition to this broad waiver, in Article IX of the Settlement Agreement – entitled

"Life Insurance and Wills" – the parties set forth in detail and in twelve separately numbered

paragraphs their rights and obligations concerning life insurance.  As noted above, prior to age

62, Decedent was required to maintain insurance in the amount of $2.2 million, and to designate

Cross and Berger as, respectively, primary and contingent beneficiary.  (Id. at 16)  That

obligation was reduced to $1 million after Decedent reached age 62.  (Id.)  Considering the

Settlement Agreement as a whole, it is clear that Cross bargained for a death benefit of $1

---

[12] Citing, in part, In re Estate of Sbarra, 17 A.D.3d 975, 977 (3d Dep't 2005) ("We find that the separation agreement here is sufficiently explicit.  It refers to and releases respondent's rights as beneficiary in decedent's retirement benefits and life insurance."); Valentin v. New York City Police Pension Fund, 16 A.D.3d 145, 146 (1st Dep't 2005) ("[U]navailing . . . is the fact that the agreement did not expressly include a waiver of preretirement death benefits"; valid waiver of "any rights . . . in . . . pension or retirement benefits"); Naginsky v. State Farm Life & Accident Assurance Co., 231 A.D.2d 695, 696 (2d Dep't 1996) ("When the judgment of divorce enforcing the terms of the separation agreement was entered and Cheryl Hochberg Naginsky thereby received the consideration bargained for, she became obligated to fulfill her promise not to make a claim for the subject life insurance proceeds"); Gallo v. Gallo, 6 Misc.3d 628, 786 N.Y.S.2d 736, 737 (N.Y.Sur.2004) ("[W]hile the separation agreement provides explicit mention of certain categories of property interests, it is silent regarding life insurance.  [It] was therefore insufficient to effect a waiver [.]"); Primerica Life Ins. Co. v. Roemer, No. 2810/2001, 2003 WL 21709724, at *2 (N.Y.Sup. July 16, 2003) (no waiver when "there [was] no provision whatsoever in the Separation Agreement regarding life insurance").

million after Decedent reached age 62, and waived her right to additional life insurance benefits. Cf. Gallo v. Gallo, 6 Misc.3d 628, 630 (N.Y.Sur. 2004) ("[W]hile the separation agreement provides explicit mention of certain categories of property interests, it is silent regarding life insurance.  [It] was therefore insufficient to effect a waiver [.]")  It is undisputed that Cross received the $1 million death benefit that she bargained for.

Because Cross, in the Separation Agreement, waived her right to insurance proceeds of more than $1 million after Decedent reached age 62, Steinmetz is entitled to receive the proceeds of the Policy.

## IV.    COUNTERCLAIMS AGAINST UNION CENTRAL

In their answers, both Steinmetz and the Estate, and Cross and Berger, filed counterclaims against Union Central.  (Dkt. Nos. 34, 40)  "Although the proper commencement of an interpleader action cannot itself give rise to liability, 'independent' claims for relief against the interpleader plaintiff may form proper counterclaims."  Bank of New York v. First Millennium, Inc., No. 06 Civ. 13388 (CSH), 2008 WL 953619, at *7 (S.D.N.Y. Apr. 8, 2008) (citing Wayzata Bank & Trust Co. v. A & B Farms, 855 F.2d 590, 593 (8th Cir.1988) (affirming judgment on counterclaim asserting breach of fiduciary duty against interpleader plaintiff that had agreed to reduction in letter of credit that harmed creditors; breach of fiduciary duty claim arose from acts unrelated to the filing of the interpleader).  "Such actions must be based on wrongful conduct independent from the filing of an interpleader, or the retention of interpleaded assets pending direction from the court."  Id.; see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente, No. 98 Civ. 1756, 2001 WL 11070, at *6 (S.D.N.Y. Jan. 4, 2001) ("[C]ounterclaims [that] arise from acts taken [by an interpleader plaintiff] within the rights granted to it by law in bringing its interpleader action . . . fail as a matter of law.") (brackets and

internal quotation marks omitted); Bank of New York v. First Millennium, Inc., 607 F.3d 905 (2d Cir. 2010).

Steinmetz and the Estate move for summary judgment on (1) their counterclaims against Union Central for equitable estoppel, negligence, negligent misrepresentation, and reformation; (2) the Estate's counterclaim against Union Central for breach of contract; and (3) Steinmetz's counterclaim against Union Central for third-party beneficiary breach of contract. (Steinmetz Not. of Mot.)  Because this Court has determined that Steinmetz is entitled to the Policy's proceeds, all of these counterclaims will be denied as moot.[13]

Cross and Berger's counterclaims against Union Central fail for multiple reasons. Because this Court has determined that they have no right to the proceeds of the Policy, Union Central is entitled to summary judgment on their claims for breach of contract and negligence. Cross and Berger's contract claim also fails because it is directly related to the filing of the interpleader action.  See Bank of New York , 2008 WL 953619, at * 7.  Finally, Cross and Berger's briefs do not address their negligence counterclaim.  Accordingly, that claim has been waived.

## V.   STEINMETZ AND THE ESTATE'S CROSS-CLAIMS AGAINST CROSS

### A.   Breach of Contract

---

[13]  To the extent that these counterclaims seek to predicate liability on Union Central's refusal to pay over the Policy proceeds to Steinmetz, these claims would, in any event, fail as a matter of law.  See Bank of New York, 2008 WL 953619, at * 7 ("BNY could not have commenced the interpleader without . . . holding the interpleader assets.  And while that interpleader was pending, BNY could not distribute funds from the interpleader assets without an order from this Court.  Thus, the counterclaims based on breach of the transaction documents, breach of the settlement agreement, . . . all fail as a matter of law and must be dismissed.")

As to Steinmetz and the Estate's tort claims, they have conceded that "the tort claims come into play" only in the event that the Court determines that Steinmetz is not entitled to the proceeds of the policy.  See Steinmetz Reply Br. at 8.

In her capacity as executrix of the Estate, Steinmetz seeks to recover against Cross for breach of contract.  "[A]n action for breach of contract requires proof of (1) a contract; (2) performance of a contract by one party; (3) breach by the other party; and (4) damages." Rexnord Holdings Inc. v. Biderman, 21 F.3d 522, 525 (2d Cir. 1994)

It is undisputed here that the Settlement Agreement constitutes a valid contract. (Cross/Berger Rule 56.1 Stmt. ¶ 8; Steinmetz Rule 56.1 Stmt. ¶ 50)  Moreover, Cross and Berger admit, and this Court has found, that the Decedent (1) maintained $2.2 million of life insurance – with Cross and Berger as, respectively, primary and contingent beneficiaries – until he reached age 62; and (2) after he reached age 62, maintained $1 million of life insurance, with Cross and Berger as, respectively, primary and contingent beneficiaries.  (Cross/Berger Rule 56.1 Stmt. ¶¶ 9-10; Steinmetz Rule 56.1 Stmt. ¶¶ 54, 67)  Accordingly, the Decedent performed his obligations under the Settlement Agreement as they relate to life insurance.

Cross, however, has not performed her obligations under the Settlement Agreement.  In the Settlement Agreement, Cross bargained for a $1 million life insurance death benefit after Decedent reached age 62.  In exchange for that and other benefits provided to her under the Settlement Agreement, Cross relinquished all rights to the Decedent's current and future property other than as set forth in the Settlement Agreement.  See Curley v. Giltrop, 68 N.Y.2d at 653.  Now, having received the $1 million life insurance death benefit that she bargained for, Cross claims that she is entitled to more.  In doing so, and in refusing to consent to the change in beneficiary, she has breached multiple provisions of the Settlement Agreement, including those in which she (1) released "any and all claims . . . to or upon the property of the [Decedent], whether . . . now owned or hereafter acquired," including as to any "death benefit"; (2) "agree[d] to execute any and all documents which shall be required, at any time . . . in order

23

that such renunciation and disclaimer shall be effective"; (3) agreed that "[i]n the event . . . [she]

receive[d] any . . . interest in property so renounced and disclaimed," she would "immediately

transfer all such right, title or interest to the estate of Decedent"; and (4) agreed to "execute and

deliver any and all further instruments and assurances and perform any acts that the other party

may reasonably request for the purpose of giving full force and effect to the provisions of this

Agreement."  (Del Mauro Cert., Ex. 15 at 27-28, 36)

    Cross's arguments that she has not breached the Settlement Agreement are

unpersuasive.  Cross first argues that "Decedent [and Steinmetz] never ***requested*** or sought

consent from Cross to change the beneficiaries of the Policy."  (Cross/Berger Sum. J. Br. at 19)

(emphasis in original).  Setting aside the fact that Union Central requested that Cross give such

consent (Steinmetz Rule 56.1 Appx., Ex. 27), and that counsel for Steinmetz and the Estate

demanded Cross's consent to the beneficiary change, and that she refused (see, e.g., id. at Ex.

28), the Settlement Agreement broadly requires Cross to affirmatively renounce and disclaim

any right to the property of the Decedent and his Estate other than as specified in the Settlement

Agreement, and to execute any documents necessary to make her renunciation and disclaimer

effective.  (Del Mauro Cert., Ex. 15 at 27-28, 36)  Cross breached these provisions.

    Cross also argues that the Settlement Agreement only requires her to renounce her

interest in the property of Decedent, and the Policy was not the sole property of Decedent; as

irrevocable beneficiary of the Policy, Cross had a vested property interest in the Policy.

(Cross/Berger Sum. J. Br. at 18; Cross/Berger Opp. to Steinmetz Br. at 15)  The Settlement

Agreement addresses numerous items in which Decedent and Cross both had property rights,

however, including a cooperative apartment, furniture and household effects, and an automobile.

Indeed, one of the primary purposes of the Settlement Agreement was to address the parties'

future rights concerning property in which they both had an interest.  Accordingly, it is not an answer to the Settlement Agreement's release provisions to say that Cross had a property interest in the Policy.

In any event, Cross once again ignores the interplay between the Settlement Agreement and the Policy.  As a result of the Settlement Agreement, Cross's rights as an irrevocable beneficiary entitled to receive insurance policy death benefits of $2.2 million had a bargained-for expiration date – when Decedent reached age 62.  The cases Cross relies on are not apposite, because none involves a divorce agreement in which the beneficiary of an insurance policy has agreed to waive his or her rights under that policy.

Cross fails in her efforts to distinguish Curley v. Giltrop, 68 N.Y.2d 651 (1986).  In Curley, the administrator of a suicide's estate brought an action to recover death benefits paid to the suicide's ex-wife, who had been named as the beneficiary in two life insurance policies.  As part of the divorce settlement, the wife had agreed to waive any right to the proceeds of the decedent's life insurance policies, but due to an error by the wife's attorney, the divorce decree did not reference life insurance.  68 N.Y.2d at 652.  The decedent never changed the beneficiary of his life insurance policies, and after his death, the ex-wife argued that he "'must have intended to leave [the ex-wife] as beneficiary, despite her waiver of that right.'"  Id. at 653.  The New York Court of Appeals rejected that argument, holding that "[w]hen the divorce was entered and [the ex-wife] obtained a decree awarding her sole possession of the house, the bank account, the stocks and bonds and other assets, she received the consideration bargained for, and she became bound to fulfill her promise not to make claim for retirement program death benefits or life insurance proceeds."  Id. at 654.  Curley applies with full force here, and indicates that where a spouse, as part of a divorce agreement, has waived rights to recover as the beneficiary of an

insurance policy, and has received the bargained for consideration promised under the divorce agreement, he or she may not later assert rights to recover as the beneficiary under that policy.

Having determined that the Settlement Agreement is a valid contract, that Decedent performed his obligations under the Settlement Agreement, and that Cross did not, the only remaining issue for purposes of the Estate's breach claim against Cross is damages.  See Rexnord Holdings Inc., 21 F.3d at 525.  Under the Settlement Agreement, in the event of breach, the guilty party is obligated to

> indemnify the other party against or to reimburse such other party for any all expenses, costs and attorney's fees resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement to be performed or complied with by the defaulting party . . . provided such suit or other proceeding results in a judgment, decree or order in favor of the party seeking to enforce said indemnity.

(Del Mauro Cert., Ex. 15 at 34)  Accordingly, the Estate's motion for summary judgment on its breach of contract claim against Cross will be granted, and Cross will be ordered to reimburse the Estate for its "expenses, costs and attorney's fees" associated with this litigation, which was made necessary because of Cross's wrongful claim to the proceeds of the Policy.[14]

## B.    Tortious Interference

Steinmetz and the Estate also argue that, by refusing to consent to the Decedent's change in beneficiary, Cross "induc[ed] Union Central to breach its contractual obligation to [provide the Policy proceeds] to Steinmetz."  (Steinmetz Sum. J. Br. 16; Steinmetz Opp. Br. 6-7) The theory of this claim is that when Decedent submitted the change of beneficiary form to Union Central, and Union Central confirmed that the beneficiary change had been made, a

---

[14]  Because this Court has concluded that Steinmetz is entitled to the proceeds of the Policy, Steinmetz and the Estate's motion for summary judgment on their unjust enrichment claim will be denied as moot.

contract was formed – to which Steinmetz was a third-party beneficiary – with which Cross tortiously interfered.

        Under New York law, a plaintiff bringing a tortious interference with contract claim must show:  "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."  Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001)  A defendant intentionally procures a breach when he "knows of a valid . . . contract" and "commits an intentional act whose probable foreseeable outcome is that one party will breach the contract, causing the other party damage."  Leventhal v. Franzus Co., Inc., No. 88 Civ. 3547, 1988 U.S. Dist. LEXIS 13651, at * 22 (S.D.N.Y. Dec. 6, 1988).

        Steinmetz is not entitled to summary judgment on her tortious interference claim. While it is clear that it was Decedent's intention to make Steinmetz the beneficiary of the Policy, Union Central made the beneficiary change in error, and in clear violation of the Policy, which states that "[a]n irrevocable beneficiary cannot be changed without his or her consent." (Steinmetz R. 56.1 Appx., Ex. 3 at 6; see also id. at 5 ("The *owner's* rights will be subject to . . . the rights of any irrevocable beneficiary." (emphasis in original))  The Court has not ruled that the Policy – and the interactions between the Decedent and Union Central regarding the change in beneficiary – standing alone create an enforceable contract, as a matter of law, to pay the proceeds of the Policy to Steinmetz.  Instead, in concluding that Steinmetz is entitled to the Policy proceeds, the Court has considered the Policy together with the Settlement Agreement, in which Cross waives her right to recover under the Policy.

## CONCLUSION

For the reasons stated above, Union Central's motion for summary judgment (Dkt. No. 72) on the interpleader Second Amended Complaint is granted, and Union Central is discharged from this case. Steinmetz and the Estate's motion for summary judgment (Dkt. No. 56) is granted as to (1) Steinmetz's claim for the proceeds of the Policy; and (2) the Estate's cross-claim for breach of contract against Cross, and otherwise denied. Cross and Berger's motion for partial summary judgment (Dkt. No. 53) is denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 53, 56, 72).

The Estate will file papers in support of its request for expenses, costs and attorneys' fees by September 25, 2012. Any opposition will be filed by October 2, 2012.

Dated: New York, New York          SO ORDERED.
       September 19, 2012

Paul G. Gardephe
United States District Judge