UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNION CENTRAL LIFE INSURANCE
COMPANY,

                Plaintiff,

- against -

HEATHER A. BERGER,
RISE K. CROSS, and
CYNTHIA STEINMETZ,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/13/13

**MEMORANDUM**
**OPINION & ORDER**

10 Civ. 8408 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       This is an interpleader action brought by Union Central Life Insurance Company concerning competing claims to a $700,000 life insurance policy (the "Policy") in the name of decedent Wayne Cross ("Decedent"). In a September 20, 2012 memorandum opinion and order, this Court determined that Cynthia Steinmetz is the proper beneficiary, and that Decedent's former spouse, Rise K. Cross ("Cross"), breached several provisions of a divorce settlement agreement with Decedent (the "Settlement Agreement") by asserting a claim to the Policy proceeds. Union Cent. Life Ins. Co. v. Berger, No. 10 Civ. 8408 (PGG), 2012 WL 4217795, at *12-13 (S.D.N.Y. Sept. 20, 2012) (Dkt No. 98).

       The Settlement Agreement contains an indemnification provision that requires a breaching party to

> indemnify the other party against or [] reimburse such other party for any [and] all expenses, costs and attorney's fees resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement to be performed or complied with by the defaulting party . . . provided such suit or other proceeding results in a judgment, decree or order in favor of the party seeking to enforce said indemnity.

Id. at *14 (quoting Del Mauro Cert., Ex. 15 at 34).

Accordingly, in its September 20, 2012 decision, this Court ruled that Cross would be ordered to "reimburse decedent's Estate for its expenses, costs and attorneys' fees associated with the litigation," id., and directed Steinmetz – acting as the Estate's executor – to submit documentation supporting the Estate's claim. Id. Steinmetz has done so, but Cross contends that the amount of attorneys' fees and costs sought by the Estate is unreasonable. See Stein Mot. (Dkt. No. 99); Cross Opp. Br. (Dkt. No. 100).

## DISCUSSION

The Estate seeks an award of $271,211.50 in attorneys' fees[1] and $8,079.67 in costs.[2] (Steinmetz Mot. (Dkt. No. 99)) The proposed award reflects the work of seven Wiggin and Dana attorneys and two paralegals. (Prout Aff., Ex. A (Dkt No. 99); Prout Supp. Aff., Ex. A (Dkt. No. 101)) The Estate has submitted contemporaneous time records that detail the nature of the work performed, the names of the attorneys and paralegals who worked on the matter, and the hours they expended. (Prout Aff., Ex. A at 10-51 (Dkt. No. 99)) Cross has raised a number of objections regarding the reasonableness of the proposed fees and costs awards. (Cross Opp Br. (Dkt. No. 100)) After reviewing the billing records and the other materials submitted by the parties, the Court concludes that the Estate is entitled to $169,620.67 in attorneys' fees and costs.

---

[1] The affidavit submitted in support of the Estate's motion states that the Estate incurred $271,215.50 in attorneys' fees. (Prout Aff. Ex. A ¶7 (Dkt. No 99)) However, the fees reflected in the records submitted to the Court amount to $271,211.50. (Id.)

[2] The amount sought was billed to and paid by the Estate. (Prout Supp. Aff., Ex. A ¶ 3(Dkt. No. 101)

2

I.  **THE ESTATE'S ENTITLEMENT TO FEES**

   A.  **New York Law Applies**

   It is undisputed that New York law governs the Estate's right to an award of attorneys' fees and costs.[3] "Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003)). Parties are free, of course, to "agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993). In New York, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Communications, LLC, 537 F.3d 168, 175 (2d Cir. 2008). Moreover, the Second Circuit has held that "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." McGuire, 1 F.3d at 1313.

   This Court has already determined that Cross and Decedent entered into a valid contract under New York law when they executed the Settlement Agreement. Union Cent. Life Ins. Co., 2012 WL 4217795, at *12 ("It is undisputed here that the Settlement Agreement constitutes a valid contract."). This Court has likewise ruled that Cross breached "multiple

---

[3] As noted in this Court's September 20, 2012 opinion, "[t]he Settlement Agreement provides that it 'shall be governed by the laws of the State of New York' (Del Mauro Cert., Ex. 15 at Art. XVIII(4)), and all parties agree that New York [law] applies to issues arising under the Settlement Agreement. (Union Central Opp. to Steinmetz Br. 14-16; Steinmetz Sum. J. Br. 10-11; Cross/Berger Sum. J. Br. 19-22 (applying New York law to claims under Settlement Agreement; Cross/Berger Opp. to Union Central Br. 8-16 (applying New York law))." Union Cent. Life Ins. Co., 2012 WL 4217795, at *8 n.11.

provisions" of that contract by wrongfully claiming entitlement to the Policy's proceeds. Id. The Court further noted in its summary judgment decision that the Settlement Agreement provides for an award of "expenses, costs and attorney's fees" to a party who prevails in any action to enforce its terms. Id. at *14. Accordingly, the Estate is unquestionably entitled to an award of attorneys' fees and costs. What remains to determine is the appropriate amount of such an award.

### B. The Award Must be Reasonable

While the Settlement Agreement does not explicitly impose a reasonableness limitation on the Estate's potential recovery, "[a] district court's award of attorneys' fees pursuant to a contractual fee-shifting provision must be reasonably related to the fee arrangement that the prevailing party would have made with counsel absent a fee-shifting agreement." In Time Products, Ltd. v. Toy Biz, Inc., 38 F.3d 660, 667-68 (2d Cir. 1994). Courts will generally "order the losing party to pay the amount actually incurred, so long as those amounts are reasonable." Chinatrust Bank (U.S.A.) v. Pinter, No. 04–CV–5331 (SLT)(KAM), 2008 WL 2987152, at *2 (E.D.N.Y. July 31, 2008). However, "[a] party is not entitled to reimbursement for fees that it would not have agreed to pay if [] there had been no contractual provision for reimbursement." In Time Products, Ltd., 38 F.3d at 668. The Estate may therefore only recover those "expenses, costs and attorney's fees" that a reasonable client in like circumstances would have expended absent an indemnification provision.

4

## II. DETERMINING AN APPROPRIATE AMOUNT

### A. General Principles

"When determining a fee award based upon a contractual attorneys' fees agreement between the parties, . . . courts have 'broad discretion' and need not follow a specific formula. As such, the Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees." Clarendon Nat. Ins. Co. v. Advance Underwriting Managers Agency, Inc., No. 06 Civ. 15361, 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting U.S. Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004)). "'Both the evaluation of reasonable attorneys' fees and the reduction of such fees lies within the sound discretion of the Court.'" Amaprop Ltd. v. Indiabulls Fin. Srvs. Ltd., No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (quoting ACE Ltd. v. CIGNA Corp., No. 00 Civ. 9423 (WK), 2001 WL 1286247, at *2 (S.D.N.Y. Oct. 22, 2001) (citing Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001))); see also Suchodolski Assocs., Inc. v. Cardell Fin. Corp., Nos. 03 Civ. 4148 (WHP), 04 Civ. 5732 (WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (citing Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996)).

"The starting point for an award of attorneys' fees is the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008). This "initial estimate" is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

"In determining a reasonable rate, a court 'may rely on its own knowledge of comparable rates charged by lawyers in the district.'" Merck Eprova AG v. Brookstone Pharm.,

5

LLC, No. 09 Civ. 9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013) (quoting Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that . . . courts have identified as relevant," including "[t]he reasonable hourly rate . . . a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190 (emphasis in original). Courts should also consider "the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively . . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Id. at 184.

"Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of [the party's] success in the litigation." Robinson v. City of N.Y., No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009). Work on claims that were not successful is compensable as long as those claims are not "wholly unrelated" to the claims on which the prevailing party succeeded. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (quoting Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992)). A downward adjustment may still be appropriate, however, where a party "succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434. A court need not "'become enmeshed in a meticulous analysis of every detailed facet of the professional representation'" to determine a proper award, Seigal v. Merrick, 619 F.2d 160, 165 n.8 (2d Cir. 1980) (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)), nor should "[a] request for attorney's fees . . . result in a second major litigation."

6

Hensley, 461 U.S. at 437. The party seeking an attorneys' fee award must demonstrate the reasonableness of the hours spent and the rates billed. See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday, 42 F.3d at 134.

### B. Hourly Rates

Attorneys in the New Haven office of Wiggin and Dana, L.L.P. represent Steinmetz and the Estate in this litigation. (Prout Aff., Ex. A ¶¶ 5, 7 (Dkt. 99)) The Estate seeks $271,211.50 in fees for the work of (1) three Wiggin and Dana partners – William H. Prout, Jr., Kim E. Rinehart, and Mark E. Haranzo; (2) four associates – Michael L. Kenny, Jr., Bradley W. Moore, Julie Loughran, and John Gregory Robinson; and (3) two paralegals identified as R. Stewart and R. Celano. (Id. ¶¶ 4, 5; Prout Supp. Aff., Ex. A ¶¶ 4-6 & attachments (Dkt. 101))

As explained below, the Court concludes that fees are recoverable only for the work of the lead partner, the lead associate, and the paralegals. The senior partner on the case – William H. Prout, Jr. – billed 235.4 hours, more than any other lawyer who worked on the case. (Prout Aff., Ex. A ¶ 7 (Dkt. No. 99)) Prout – who has been a member of the bar for forty years and is a highly experienced business and probate litigator –works in Wiggin and Dana's New Haven office. His billing rate during the relevant period was $580 to $595 per hour, and his billings amount to $139,788.50. (Id.) (Id. ¶ 4)

Bradley W. Moore billed 71.5 hours, by far the most of any associate involved in the case. (Id. ¶ 7) He is also assigned to Wiggin and Dana's New Haven office, and his billing rate during the relevant period was $235 per hour. His billings total $16,802.50. (Id. ¶ 7; Prout

7

Supp. Aff., Ex. A ¶ 5 & attachments (Dkt. No. 101)) R. Celano billed 29.9 hours to the case at a rate of $185 per hour. The other paralegal – R. Stewart – billed 5.4 hours at a rate of $220 to $225 per hour. The paralegals' fees amount to $6,744.00. (Prout Aff., Ex. A ¶ 7 (Dkt. No. 99); Prout Supp. Aff., Ex. A ¶ 6 (Dkt. No. 101))

"[D]istrict courts should use the 'prevailing [hourly rate] in the community' in calculating . . . the presumptively reasonable fee." Arbor Hill, 522 F.3d at 190 (second alteration in original). "[T]he 'community' for purposes of this calculation is the district where the district court sits." Id. (citing Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)).

The billing rates for Prout and Moore are within the range that courts in this District have found reasonable in comparable cases for attorneys with similar experience. See, e.g., Sidley Holding Corp. v. Ruderman, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), adopted, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (citing Edmonds v. Seavey, No. 08 Civ. 5646 (HB) (JCF), 2009 WL 1598794, at *2 (S.D.N.Y. June 5, 2009), adopted, 2009 WL 2150971 (S.D.N.Y. July 20, 2009); RBFC One, LLC v. Zeeks, Inc., No. 02 Civ. 3231 (DFE), 2005 WL 2105541, at *2 (S.D.N.Y. Sept. 1, 2005)) ("In terms of the market rate for representation in the Southern District of New York, recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals.").

The paralegal billing rates of $220 to $225 and $185 per hour are, however, considerably higher than the rate that is generally approved in this District. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013), adopted, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013) (finding

8

$140 paralegal billing rate reasonable and $265 hourly rate unreasonable); N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc., No. 09 Civ. 9479 (JGK) (AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010), adopted, 2010 WL 1558568 (S.D.N.Y. Apr. 19, 2010) ($125 per hour is a reasonable paralegal billing rate); Sidley Holding Corp, 2009 WL 6047187, at *25-26 (rejecting $195 paralegal billing rate and setting the reasonable rate at $125 per hour); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, at *4 (S.D.N.Y. Aug. 11, 2009) (finding $125 paralegal billing rate to be reasonable). Accordingly, the paralegals' rates will be reduced to $125 per hour.

### C.     **Staffing and Time Expended**

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The Court will exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done," New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "'its own familiarity with the case . . . and its experience generally.'" Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir 1985)).

Here, Cross argues that the Wiggin and Dana billing records are "rife with overstaffing, duplication of effort and failure to economize." (Cross Objections at 1, 7 (Dkt. No. 100)) Courts may, of course, exclude "excessive, redundant or otherwise unnecessary hours" from the calculation, Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), or may make an across-the-board reduction to address the unnecessary expenditure of time. See Luciano v.

9

Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (no abuse of discretion where district court reduced counsel's requested hours by 15%).

As noted above, three Wiggin and Dana partners, four associates and two paralegals billed time on this litigation. While "'[t]he use of multiple attorneys . . . is not unreasonable per se,'" Simmonds v. N.Y.C. Dep't of Corr., No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (quoting Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984)) (second alteration in original), assigning numerous attorneys to a straightforward matter presents a risk of inefficiency, duplication, and unnecessary billing. See id. at *6-7.

As the Second Circuit has recognized:

> [i]n assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion. . . . [A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1146. The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." Id.; see also Sullivan v. Syracuse Hous. Auth., No. 89-CV-1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3, 1993) (district court must ensure that fee award reflects only work that was "necessary to the litigation" and "a cost efficient use of co-counsel and outside counsel").

This case is a routine interpleader action in which two parties made conflicting claims to the proceeds of an insurance policy. In resolving the dispute, the Court was confronted with a relatively common problem in divorce and estate law, namely "the interplay between a written divorce agreement – in which rights to an insurance policy's death benefit are addressed –

10

and an insurance policy referenced in the divorce agreement." Union Cent. Life Ins. Co., 2012 WL 4217795, at *10. As this Court found in its September 20, 2012 memorandum opinion and order, "[c]onsidering the Settlement Agreement as a whole, it is clear that Cross bargained for a death benefit of $1 million after Decedent reached age 62, and waived her right to additional life insurance benefits." Id. at *11. It is likewise clear that Cross breached "multiple provisions" of the Settlement Agreement by asserting a claim to additional benefits upon Decedent's death. Id. at *13. Given that this litigation turned on issues of contract interpretation, neither the scope nor the complexity of the issues presented justifies the number of lawyers who billed time to this case.

There are several other aspects of the Wiggin and Dana bills that counsel against granting the fee application in whole. As an initial matter, the senior partner billed more time to the case than any of his six colleagues. Indeed, the senior partner billed more than three times the number of hours logged by the lead associate. Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner. See, e.g., Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 301-02 (S.D.N.Y. 2001) ("[T]he billing records for Graff, a senior partner at KKF, show numerous entries for tasks more appropriately handled by younger associates.") (citing Plummer v. Chemical Bank, 592 F. Supp. 1168, 1172 (S.D.N.Y.1984) (reducing fee request by one-half because of numerous inefficiencies, including "$175 per hour partners doing work easily and ordinarily performed by junior associates"); Beech Cinema, Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195, 1197 (S.D.N.Y.1979), aff'd, 622 F.2d 1106 (2d Cir.1980) ("Many of the functions performed by the partners could have been satisfactorily accomplished by associates, with a considerable saving in fees.")).

The Estate has also not explained what role the other two partners played in the case and why it was necessary to staff the case with three partners. Similarly, there is no explanation as to why four associates performed work on this case. Because the Estate has not met its burden to demonstrate that the staffing here did not lead to inefficiency, duplication, and unnecessary billing, the attorneys' fee award will reflect only the services provided by the lead partner, the lead associate, and the paralegals.

Cross objects not only to the number of hours billed, however, but also to the "vague" nature of the billing entries. (Cross Objections at 1, 7 (Dkt. No. 100)) Deficient or incomplete billing records may result in a reduced fee award. See Hensley, 461 U.S. at 437 n.12 (fee applications must "identify the general subject matter of . . . time expenditures"). Because entries or records lacking sufficient detail "cannot be evaluated for reasonableness," they are not sufficient to justify a fee award. Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00 Civ. 2474 (AGS), 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001).

Here, the Estate's attorneys supplied time records for approximately eleven months of litigation. (Prout Aff., Ex. A (Dkt No. 99)) These records include redacted copies of invoices itemizing the time spent by Wiggin and Dana personnel on specific services in connection with the interpleader litigation. (Id.) Contrary to Cross's objection, these billing records are sufficiently detailed to demonstrate the number of hours expended by the Wiggin and Dana attorneys and paralegals, and the tasks performed. Accord Raniola v. Bratton, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003) (finding that although certain time entries were "fairly general, terms such as 'case preparation' or 'meeting' . . . are sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed"); id. (citing Tran v. Tran, 166 F. Supp. 2d 793, 800

(S.D.N.Y. 2001) ("Although attorneys must record the general nature of their work, they need not include detailed descriptions of the exact work performed.").

Because a determination as to the reasonableness of the number of hours expended on a case is invariably fact and context specific, the inquiry is "committed to the discretion of the district court." Clarke, 960 F.2d at 1153. Here, the descriptions of the services provided are sufficient, in context, to allow the Court to evaluate the reasonableness of the time expended. Accordingly, the Estate's fee request will not be further reduced on this basis.

D.  **Lack of Success**

"The product of reasonable hours times a reasonable rate does not end the inquiry." Hensley, 461 U.S. at 434. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of 'results obtained.'" Id.

In their summary judgment motion, Steinmetz and the Estate sought an order: (1) granting Steinmetz death benefits under the Policy; (2) granting the Estate summary judgment on its cross-claim for breach of contract against Cross; (3) granting Steinmetz and the Estate summary judgment on their unjust enrichment cross-claims against Cross; (4) granting Steinmetz summary judgment on her cross-claim against Cross for tortious interference; (5) granting Steinmetz and the Estate summary judgment on their counterclaims against Union Central for equitable estoppel, negligence, negligent misrepresentation, and reformation; (6) granting the Estate summary judgment on its counterclaim against Union Central for breach of contract; and (7) granting Steinmetz summary judgment on her counterclaim against Union Central for third-party beneficiary breach of contract.

Steinmetz and the Estate prevailed only on claims one and two. Union Cent. Life Ins. Co., 2012 WL 4217795, at *5. Having determined that Steinmetz was entitled to the Policy proceeds, this Court deemed her claims against Union Central moot. Id. at *12. Similarly, having ruled in favor of the Estate on its breach of contract claim against Cross, the Court dismissed as moot Steinmetz and the Estate's unjust enrichment claim. Id. at *14 n.14. Finally, the Court denied Steinmetz summary judgment on her tortious interference claim. Id. at *14 and n.13. Because the Estate only prevailed on some of its claims, this Court must decide whether a reduction of the fee award is warranted.

"[T]wo questions must be addressed" in determining whether mixed results require a reduced attorneys' fee award: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley, 461 U.S. at 434. Where claims are unrelated, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" Id. at 435 (quoting Davis v. Cnty. of Los Angeles, No. 73-63-WPG, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)). However, where a party's claims "involve a common core of facts or [are] based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435.

Here, the Court did not rule against the Estate, but merely found it unnecessary to reach the merits of certain of its claims. Moreover, these claims were not "unrelated to the claims on which [the Estate] succeeded." Id. at 434. All of the claims here relate to the interplay between the Policy and the Settlement Agreement.

14

Cross objects, however, to the inclusion of fees related to the counterclaims the Estate filed against Union Central. She complains that "had Union Central not violated the Policy the only litigation that would have possibly ensued would presumably have been a straightforward claim by the Estate for breach of contract against Cross." (Cross Opp. Br. at 5) This argument misses the point. Whatever responsibility Union Central might bear for its negligence in failing to seek Cross's approval for the beneficiary change, the critical fact is that this entire action would have been unnecessary had Cross not breached her obligations under the Settlement Agreement. It is disingenuous for Cross to argue that she bears no responsibility for the expenses the Estate incurred vis à vis its claims against Union Central, when those claims were made necessary by Cross's refusal to provide her assent to the change in beneficiary as required by her Settlement Agreement with Decedent.

*     *     *     *

The fees billed by Prout, Moore, and the paralegals – at the Court-adjusted rate – total $161,541.00. The Estate is awarded attorneys' fees in this amount.

## III. COSTS

The Estate seeks a costs award of $8,079.67.

### A. Legal Standard

In addition to attorneys' fees for time reasonably expended, a party may be entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989); see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including "photocopying, travel, and telephone costs"); Anderson v. City of New York, 132 F. Supp. 2d 239, 245-47 (S.D.N.Y. 2001)

(allowing for recovery of service, filing, photocopying, and witness fees, as well as computerized legal research costs). Recovery is not permitted, however, for costs associated with routine office overhead. See Kuzma, 821 F.2d at 934 ("[N]onrecoverable routine office overhead . . . must normally be absorbed within the attorney's hourly rate.").

B. Analysis

The Estate seeks to recover expenses related to online legal research, travel, photocopy services, overnight delivery, and deposition transcript fees. (Prout Aff., Ex. A ¶ 8 (Dkt. No. 99)) Such expenses are properly included in a fee award. See, e.g., Anderson, 132 F. Supp. 2d at 245-47. In support of its application, the Estate has submitted detailed records reflecting disbursements for these expenses. Id.

Cross contests the online legal research expenses and the photocopy charges. With respect to the online research expenses, Cross complains that the Estate has not included invoices from the service providers, and has not disclosed "whether [Wiggin and Dana] was charging the [Estate] only what the computer service was charging." (Cross Opp. Br. at 7) As to photocopy expenses, Cross argues that the records are deficient because the Estate does not identify "what [] documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary." (Id. at 8)

In response, the Estate's attorneys attest that the Estate was billed for online legal research "at Wiggin and Dana's costs, without markup." (Prout Supp. Aff., Ex. A ¶ 7) As to photocopy services, they explain that "[p]hotocopies were charged to the Estate at the rate of $.10 per copy." (Id. at ¶ 8) The Court concludes that the Estate has offered sufficient proof of its costs and has demonstrated that the costs it seeks are reasonable. Accordingly, $8,079.67 in costs is allowed.

## **CONCLUSION**

For the reasons stated above, Decedent's Estate is awarded $161,541.00 in attorneys' fees and $8,079.67 in costs.

Dated: New York, New York
      December 12, 2013

                        SO ORDERED.

                        _____
                        Paul G. Gardephe
                        United States District Judge